IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

HERAUD ST. LOUIS,
LUIS MARCIAS-ARREDONDO,
THEOPHILUS BUCKNOR,
DORIVAL WILKENS,
MARK ANTHONY MONTAGUE,
ROMAINE ODEEAN WILSON and
LENNOX ROBINSON,

Case No. 2:20-cv-349-FtM-60NPM

                Petitioners-Plaintiffs,

v.

JIM MARTIN, Field Office Director, Miami
Field Office, U.S. Immigration and
Customs Enforcement, *et al.*,

                Respondents-Defendants.

DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR LIANA J. CASTANO

I, Liana J. Castano, Assistant Field Office Director (AFOD) make the following statements under oath and subject to the penalty of perjury:

1. I am employed by U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), and currently serve as the Acting Officer in Charge (AOIC) of the Krome Service Processing Center. I am also an Assistant Field Office Director (AFOD) at Krome. I have held this position since September 2, 2018.

2. I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, employees of DHS contract facilities, and information portals maintained and relied upon by DHS in the regular course of business.

3. In my current position, I am responsible for oversight of detained case management at Krome Service Processing Center, as well as Glades County Detention Center. I work closely with the ICE Health Service Corps (IHSC) and their assigned Field Medical Coordinators (FMCs) to ensure compliance in care being offered.

4. IHSC's FMCs ensure that the provision of medical care by contractors to the ICE detainees within the Inter-Governmental Service Agreement (IGSA) facilities meets detention standards, as required by the IGSA contract. The FMCs do not provide hands-on care or direct the care within the IGSAs but monitor the medical care and services provided by the contract facilities. Medical staff at the contract facilities are directly responsible for medical care at the facility. Medical care at Glades County Detention Center is provided by contract.

5. Since the onset of reports of Coronavirus Disease 2019 (COVID-19), ICE epidemiologists have been tracking the outbreak, regularly updating infection prevention and control protocols, and issuing guidance to field staff on screening and management of potential exposure among detainees. [1]

6. In testing for COVID-19, the medical staff at Glades County Detention Center is also following guidance issued by the Centers for Disease Control (CDC) to safeguard those in its custody and care.

7. On April 10, 2020, U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) released its *ERO COVID-19 Pandemic Response Requirements* (PRR), a guidance document that builds upon previously issued guidance and sets forth specific mandatory requirements expected to be adopted by all detention facilities housing ICE detainees, as well as best practices for such facilities, to ensure that detainees are appropriately housed and that available mitigation measures are implemented during this pandemic.[2]

8. Each detainee is screened for disabilities upon admission by a medical professional. Identified disabilities are further evaluated and reasonable accommodations are provided as medically appropriate.

9. At the Glades County Detention Center, prior to entering the facility, the detainees' temperatures are assessed for fevers, and detainees are screened for respiratory illnesses. During intake, medical screenings are conducted on all detainees within a 12 hour timeframe, to include any chronic medical or mental health condition, as well as flu, coronavirus and Hepatitis A. Detainees are asked to confirm if they have had close contact with a person with laboratory-confirmed COVID-19 in the past 14 days. , and whether they have traveled from or through area(s) with sustained community transmission in the past two weeks.

10. The detainees' responses and the results of these assessments will dictate whether to monitor or isolate the detainees. Those detainees who present symptoms compatible with COVID-19 will immediately be transported off-site to the nearest testing center or Emergency Room hospital for further evaluation and testing. If testing is positive, they will remain isolated and treated. If the detainee returns to the facility with a positive

---

[1] Specifically, ICE closely follows the CDC's *Interim Guidance on Management of Coronavirus 2019 (COVID-19) in Correctional and Detention Facilities* at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html, and its general public guidance at https://www.cdc.gov/coronavirus/2019-ncov/index.html.
[2] https://www.ice.gov/sites/default/files/documents/Document/2020/eroCOVID19responseReqsCleanFacilities.pdf.

diagnosis, he/she will be kept quarantined until he/she is no longer infectious. A health care provider will monitor vital signs, pulse oximetry, input/output, auscultate lungs, and document findings in the medical record. If the patient demonstrates any signs of worsening, the patient will be referred to a local hospital. Health Care Providers conduct daily rounds at the facility during the week and conduct rounds remotely during the weekend if a Health Care Provider is not on site.

11. In cases of known exposure to a person with confirmed COVID-19, exposed detainees who are asymptomatic are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored twice daily for fever and symptoms of respiratory illness. Cohorting is an infection-prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic. As identified in the PRR, a cohort is a group of persons with a similar condition grouped or housed together for observation over a period of time. Given the significant variance in facility attributes and characteristics, cohorting options and capabilities will differ across the various detention facilities housing ICE detainees. At the Glades County Detention Center, cohorting is achieved in the following manners: An individual with a laboratory confirmed case of COVID-19 is removed from the housing unit, placed in medical isolation and treated. The remaining individuals who may have had exposure will remain in their housing unit for monitoring during a 14-day period. During this period, no other individuals are added to that housing unit. Individuals in the cohorted housing unit cannot come into contact with individuals from other housing units. Additionally, Glades cohorts female detainees upon initial intake in designated single cells for 14 days prior to placement into the general population. Male detainees who are transferred to Glades must be medically screened and cleared for transfer. Glades does not accept male detainee transfers prior to an initial 14-day period of monitoring and isolation.

12. Glades County Detention Center medical staff provide urgent care and acute stabilization prior to transportation to a hospital. The facility has the following medical capabilities: a clinic staff which manages both males and females, provides daily access to sick calls in a clinical setting, and has an onsite medical observation room and access to specialty services and hospital care at the Hendry Regional Medical Center in Clewiston, Florida. The hospital is readily available to meet the needs of the facility and detainee population, if needed.

13. As of 6:00 a.m. on May 22, 2020, Glades County Detention Center reports the following information:

    - There are zero suspected cases of COVID-19 at the Glades County Detention Center. In the event a detainee exhibits flu like symptoms, the detainee is immediately isolated from the rest of the population and a mask and gloves are issued to him/her. A detainee with a suspected case of COVID-19 may also be placed in a negative pressure cell. If symptoms are suggestive of COVID-19, the detainee will be transported for further testing.

3

- There is one confirmed case of COVID-19 of a Sheriff's Deputy at Glades County Detention Center. He is no longer on the schedule and is self-quarantined.

- There are 336 detainees who are cohorted as a precautionary measure, per the established protocol. These detainees are medically assessed twice a day. All detainees remain afebrile. The cohort is scheduled to end 14 days after the initiation of the cohort, on June 3, 2020.

- There have been zero detainees who have tested positive for COVID-19 at the Glades County Detention Center.

- There have been zero ICE officers who have tested positive for COVID-10 at the Glades County Detention Center.

14. Glades County Detention Center has populations within its approved capacities and is not overcrowded. As of May 22, 2020, the population is 73% capacity, in compliance with the guidelines published on April 10 and referenced in paragraph 7 above.

15. ICE detainees housed at Glades County are housed in dormitory style housing. The detainees are housed in a two-story open floor pod. The bunkbeds are separated into subgroups of six bunkbeds per group. The groups are position in a cubby opening with no front wall. The bunks are lined up in rows of three approximately 12 inches apart from the head of one bunk to the foot of the next bunk and about seven feet apart side to side. The distance between the upper and the lower bunk is 34 inches. The distance between beds is 7 feet 2 inches.

16. I have been advised that chairs or benches where detainees eat at Glades are 3 feet apart. Showers are separated by a wall 6 inches wide and 4 feet tall. Toilets are separated by a wall 6 inches wide and 4 feet tall.

17. Glades County Detention Center has increased sanitation frequency and provides sanitation supplies as follows:

- Glades County Detention staff issue every ICE detainee a surgical mask. Staff also posted instructions in English, Spanish and Creole regarding the proper use of the masks and exchange the masks every Friday.

- Glades provides, at no cost, adequate amounts of soap, water and cleaning materials to ICE detainees, for their personal areas. Upon intake, ICE detainees are given an opportunity to shower and are issued clean clothing, bedding, towels and personal hygiene items, to include soap, which is replenished upon request. Detainees at Glades are also provided an individual allotment of 4 oz of antibacterial soap, for individual use, which is replenished as needed. Female detainees receive 7.5 oz of bodywash, which is replenished as needed.

4

- All ICE detainees are issued a clean, pre-sanitized mattress upon arrival to the facility. All bedding is washed and exchanged once a week. Towels are washed and exchanged three times per week.

- The dormitory units at Glades are all equipped, on each floor, with antibacterial soap dispensers, running water and paper towels. These items are replenished as needed.

- Glades cleans and disinfects surfaces and objects that are frequently touched in all common areas using a multi-surface cleaner and disinfectant which is an EPA registered disinfectant. Sanitation measures include regimented cleaning details throughout the facility on a continual basis. Cleaners are used in common areas, to include tables, chairs, phones, bathrooms and showers.

- Dormitories at Glades continue to be sanitized twice daily. Detainees also receive cleaning supplies for their personal areas.

18. Glades has suspended in-person social visitation and facility tours. Detainees continue to have access to telephones and tablets, as well as routine mail.

19. Glades screens all personnel, including County officers, ICE staff, medical staff, transport officers, administrative personnel, and attorneys when they enter the facility, including the taking of body temperatures. Detention staff are screened twice per shift.

20. All staff members are required to wear personal protective equipment (PPE). Staff at Glades receive gloves, masks, face shields, sanitizer, antibacterial soap and disinfectant wipes.

21. Glades has suspended all vendors from visiting the facility unless prior approval is obtained. Private bar attorneys are encouraged to utilize the telephone to communicate with the detainee population. In the event a contractor or private bar attorney must enter the facility, he/she must wear gloves and a mask at all times while they remain in the facility. Attorneys who do not have PPE are provided PPE to facilitate legal representation with detainees.

22. Glades staff is providing education on COVID-19 to staff and detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with the hands, and to seek medical care if they feel ill. Detainees are also informed of the importance of sleeping in a head-to-toe position. During intake, the detainees are educated on how to access the medical department and to report <u>any and all</u> symptoms to medical. Signs are also posted throughout the facility in English and Spanish. The facility provides detainees daily access to sick call.

23. Glades staff and ICE regularly share information on detainees who may be at high risk for COVID-19 and have chronic conditions. ICE has reviewed its detained "at risk population" as identified by the CDC guidelines to determine if detention remains

appropriate, considering the detainee's health, public safety and mandatory detention requirements, and adjusted custody conditions, when appropriate, to protect health, safety and well-being of its detainees. In addition, the detention population has been reduced by 27 percent, in accordance with ICE's guidance of April 10, 2020 that is referenced in paragraph 7, to facilitate social distancing and to mitigate the spread of COVID-19.

24. I have reviewed the procedural history of the cases of Heraud St Louis, Axxx xxx 356; Romaine Odean Wilson, Axxx xxx 101; Lennox Junior Robinson, Axxx xxx 908; Mark Anthony Montaque, Axxx xxx 935; and Luis Macias-Arredondo, Axxx xxx 257, as well as the allegations regarding their medical conditions as set forth in the Motion for Temporary Restraining Order relating to this case.

## Petitioner Heraud St. Louis

25. Petitioner St. Louis is a native of the Bahamas and a citizen of Haiti. He was previously placed in removal proceedings by DHS in 2012; an immigration judge granted Petitioner's application for adjustment of status, in conjunction with a waiver of inadmissibility for his criminal convictions pursuant to Section 212(h) of the Immigration and Nationality Act. Thereafter, in February, 2019, DHS officials encountered Petitioner in Ft. Meyers, FL at the Department of Corrections' probation office. DHS arrested Petitioner and detained him on February 1, 2019. DHS served Petitioner with a Notice to Appear, charging him with removability pursuant to Section 237(a)(2)(B)(i) as being removable based upon a conviction for a controlled substance violation. State v. St. Louis, Case No. 18-016574 (Lee County, FL) (possession of cocaine, marijuana, driving while license suspended or revoked (habitual revocation)). On June 21, 2019, DHS transferred Petitioner to Glades County Detention Center based upon his risk classification and bedspace needs. Petitioner appeared before an immigration judge, who sustained the charge and denied his applications for relief from removal; the immigration judge also ordered Petitioner removed to The Bahamas, or in the alternative, to Haiti. Petitioner filed an appeal before the Board of Immigration Appeals, the administrative appellate body having jurisdiction over the matter, and it is currently pending.

26. In compliance with Fraihat v. ICE, 19-cv-01546 (C.D. Cal. Apr. 20, 2020), ERO has identified St. Louis as a subclass member due to the risk factor of hypertension, and he has undergone a custody determination. ICE determined that Petitioner will remain in custody as he is subject to mandatory detention pursuant to Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c).

27. Notably, however, on May 20, 2020, Petitioner was released from Glades County Detention Center and transferred to the custody of Lee County Sheriff's Office, based upon an outstanding warrant issued by the State of Florida, for failing to abide by the conditions of his probation, to include the submission of a tampered urine specimen for his court-ordered drug testing. Consequently, Petitioner is no longer in ICE custody. ICE has placed a detainer with the Lee County Sheriff's Office to notify the agency when Petitioner's legal proceedings, and any subsequent criminal sentence, are concluded.

Petitioner Romaine Odean Wilson

28. Petitioner Wilson is a native and citizen of Jamaica, who was admitted to the United States in 2012. In 2014, Petitioner was convicted in Broward County, FL of Attempted Robbery with a Weapon, for which he received a five year term of probation.  In 2019, Petitioner was convicted in Broward County, FL of Dealing in Stolen Property and False Verification of Ownership to Pawn Broker, for which he received a term of imprisonment of 180 days, with credit for 44 days' time served, and a term of probation of three years.  In October, 2019, DHS officials served Petitioner with a Notice to Appear, charging him with removability pursuant to Section 237(a)(2)(A)(ii) for his convictions for two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.  DHS detained Petitioner at Glades County Detention Center based upon his risk classification and bedspace needs.  On April 20, 2020, an immigration judge sustained the charge, and denied Wilson's applications for relief from removal.  To date, Petitioner has not filed an appeal to the Board of Immigration Appeals, and his appeal is administratively final as of May 21, 2020, upon expiration of the time within which to file an appeal.

29. In compliance with Fraihat v. ICE, 19-cv-01546 (C.D. Cal. Apr. 20, 2020), ERO has identified Wilson as a subclass member due to his history of seizures, and he has undergone a custody determination.  ICE completed a custody determination of Petitioner and determined that Petitioner will remain in custody as he was subject to mandatory detention pursuant to Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c).  On May 21, 2020, Petitioner's removal order became administratively final, and ICE will begin efforts to remove Petitioner from the United States to Jamaica.  Detention authority for post-order custody reverts to Section 241 of the Immigration and Nationality Act, 8 U.S.C. § 1231, and pursuant to that authority, ICE shall detain Petitioner during the removal period. Wilson is within the 90-day removal period outlined in 8 U.S.C. § 1231(a)(1), which expires on August 21, 2020.  Since there is a significant likelihood of removal in reasonably foreseeable future, he will remain in custody. The 180-day removal period expires on November 21, 2020.

Lennox Junior Robinson

30. Petitioner Robinson is a native and citizen of Jamaica, who was admitted to the United States in 2009 as a lawful permanent resident.  In July 2019, he was convicted in Broward County, FL of Carrying a Concealed Firearm, for which he received an 11 month term of probation.  On December 3, 2019, ICE officials encountered Petitioner and arrested him, detaining him at Glades County Detention Center on the same date. DHS detained Petitioner at Glades County Detention Center based upon his risk classification and bedspace needs. Thereafter, DHS charged Petitioner with removability pursuant to Section 237(a)(2)(C), based upon his conviction at any time after admission for a firearms offense.  On January 22, 2020, an immigration judge determined that Petitioner is ineligible for a custody redetermination, inasmuch as his criminal conviction renders him subject to mandatory detention pursuant to Section 236(c) of the Immigration and Nationality Act.  Petitioner is next scheduled to appear before an immigration judge for a hearing on the merits of his applications for relief from removal on July 1, 2020.

31. In compliance with <u>Fraihat v. ICE</u>, 19-cv-01546 (C.D. Cal. Apr. 20, 2020), ERO has identified Robinson as a subclass member due to his history of asthma and he has undergone a custody determination. ICE completed a custody determination of Petitioner and determined that Petitioner will remain in custody as he was subject to mandatory detention pursuant to Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c).

### Mark Anthony Montaque

32. Petitioner Montaque is a native and citizen of Jamaica, who was admitted to the United States in 2006 as a conditional resident. In January, 2019, DHS officials encountered Petitioner at the Hillsborough County Jail following his arrest for aggravated child abuse and child neglect. <u>Id.</u> In 2020, Petitioner was convicted in the Circuit Court, in and for, Hillsborough County, FL of the offense of child neglect. <u>State of Florida v. Mark Anthony Montaque</u>, Case No. 17-CF-002401 (Hillsborough County, FL). DHS arrested Petitioner on February 3, 2020. On the same day, DHS served Petitioner with a Notice to Appear, charging Petitioner with removability pursuant to Section 237(a)(2)(E) of the Immigration and Nationality Act, as amended, based upon his conviction for a crime of child abuse, neglect or abandonment. Petitioner has been detained by ICE at Glades County Detention Center since February 4, 2020. DHS detained Petitioner at Glades County Detention Center based upon his risk classification and bedspace needs. On May 6, 2020, Petitioner appeared with counsel, the FIU Law Clinic, and requested a continuance for review of the Notice to Appear and to prepare the case, and the matter was reset to June 8, 2020.

33. In compliance with <u>Fraihat v. ICE</u>, 19-cv-01546 (C.D. Cal. Apr. 20, 2020), ERO has identified Montaque as a subclass member due to his HIV status, and he has undergone a custody determination. ICE has determined that Petitioner will remain in custody as he is subject to mandatory detention pursuant to Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c).

### Petitioner Luis Macias-Arredondo

34. Petitioner Macias-Arredondo (Macias), is a native and citizen of Colombia, who was paroled into the United States in 2018. On February 11, 2020, Petitioner was detained by ICE and processed for Expedited Removal under 8 U.S.C. §1225(b)(1). Following an interview, DHS officials issued a Notice to Appear, charging Petitioner as an arriving alien pursuant to Section charged as an arriving alien under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an intending immigrant without a proper admission document.

35. Macias was transferred to the Glades County Detention Center on February 14, 2014, based upon his detainee classification and in light of his federal conviction for Possession with Intent to Distribute a Quantity of Cocaine. <u>United States v. Luis Marcias</u> Arredondo, Case No. 11CR63 (M.D.Fla.). Macias' removal proceedings are pending, and a merits hearing is scheduled on Macias' applications for relief from removal on June 8, 2020.

36. Macias is not identified as a subclass member of Fraihat v. ICE, 19-cv-01546 (C.D. Cal. Apr. 20, 2020).  Macias has no documented history of surgery, hypertension diagnosis or smoking. His last blood pressure reading at Glades was normal (118/80).  Based upon Petitioner's manner of entry, his attorney of record has been provided a Parole Advisal and Scheduling Notification form, to advise him of the documentation required to apply for parole.

37. Glades County medical staff is in possession of the risk factors and subclass definitions outlined in Fraihat v. ICE. The petitioners with risk factors [Wilson, Robinson, Montaque, and St. Louis] are part of the chronic care clinic and are evaluated on a routine basis.

38. All ICE detainees are provided surgical masks prior to being transferred, released or going to medical appointments.

39. Detainees are required to wear masks during transfers. Transportation staff monitors detainees for compliance during the trip.  Similarly, detention and transportation officers are required to wear masks during transfers from one facility to another.

40. All ICE detainees removed or transferred via ICE Air Operations are screened for symptoms of COVID-19, to include a temperature check prior to boarding.  In addition, all detainees must wear a mask, or are denied boarding.

DATED: May 22, 2020

_____
Liana J. Castano
Assistant Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement