**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

HERAUD ST. LOUIS, LUIS MACIAS-ARREDONDO, THEOPHILUS BUCKNOR, DORIVAL WILKENS, MARK ANTHONY MONTAQUE, ROMAINE ODEAN WILSON and LENNOX ROBINSON,

Petitioners,

v. Case No.: 2:20-cv-349-FtM-60NPM

JIM MARTIN, CHAD WOLF, MATTHEW T ALBENCE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, DAVID HARDIN and SCOTTY RHODEN,

Respondents.
_______________________________________/

**ORDER DENYING “PETITIONERS-PLAINTIFFS’ MOTION FOR TEMPORARY RESTRAINING ORDER”**

Pending before the Court is “Petitioner-Plaintiffs’ Motion for Temporary Restraining Order,” with the “Supplemental Declaration of Amien Kacou,” filed on May 19, 2020.[1] (Doc. 17, “Motion;” Doc. 17-1, “Declaration”). Petitioners seek a temporary restraining order prohibiting their transfer and ordering their immediate release from the custody of Immigration and Custom’s Enforcement (“ICE”) due to the COVID-19 global outbreak. (Doc. 17 at 1-2; 25). The Court deferred ruling on the Motion and directed Respondents to file a response. (Doc. 18). Respondents

[1] Although docketed on May 19, 2020, CM/CEF reflects the Motion was filed at 11:57 P.M. and not reviewed by the Court until May 20. 2020.

filed their "Opposition to Motion for Temporary Restraining Order," attaching the Affidavits of Assistant Field Office Director Cardell C. Smith and Assistant Field Office Director Liana J. Castano. (Doc. 28, "Opposition," Doc. 28-1, "Cardell Aff.," Doc. 28-2, "Castano Aff."). The Court accepted the Brief of *Amici Curiae* Public Health and Human Rights Experts. (Doc. 29, "*Amici* Brief"). The Court granted leave and Petitioners filed a Reply to the Opposition. (Doc. 32, "Reply"). The Court has carefully reviewed the pleadings and other submissions and, as more fully set forth below, denies Petitioners' Motion.

## I. Background

Petitioners commenced this action by filing their "Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief" and paying the $5.00 filing fee on May 12, 2020.[2] ("Petition," Doc. 1, receipt no. 113A-16804143). The Petition includes several supporting exhibits and various affidavits. According to the Petition, the seven named Petitioners suffer from various "preexisting medical conditions and/or age" that make them "highly vulnerable to serious illness or death from COVID-19." (*Id.* at ¶ 1). Petitioners allege the conditions at Glades County Detention Center in Moore Haven, Florida ("Glades") and Baker County Detention Center in MacClenny, Florida ("Baker")[3] constitute punishment and violate their Fifth Amendment due process rights. They argue that the synthesis of their respective medical

[2] Although docketed on May 12, 2020, CM/CEF reflects the Petition was filed at 10:42 P.M. and not reviewed by the Court until May 13, 2020.

[3] Baker is in Baker County and is within the venue of the Jacksonville Division of this Court. M.D. Fla. R. 1.02(b)(1).

infirmities, together with the conditions of confinement amid the current COVID-19 pandemic, mandate release. The Petition is a hybrid pleading because it complains about the conditions of the detainees' confinement at Glades and Baker, while also seeking release from those facilities.

The Court directed Respondents to file response to the Petition by May 21, 2020. (Doc. 4). The day before the response was due, Petitioners filed the instant Motion, claiming Respondents had transferred one of the Petitioners to Krome Service Processing Center ("Krome") and threatened to transfer a second detainee "far away" in retaliation for filing this suit. (Doc. 17 at 1). The Motion requests Petitioners "immediate release" from Glades, Baker and Krome, and an Order prohibiting Respondents from transferring Petitioners "to another detention facility unless required by another judicial proceeding." (*Id.* at 25).

In response, Respondents argue the Court lacks authority to grant Petitioners release as relief because this is a conditions of confinement action, not a habeas action. (Doc. 28 at 2). Alternatively, Respondents maintain that even if Petitioners are entitled to release, Petitioners have not met the substantial burden to merit preliminary injunctive relief. (*Id.*).

## II. Preliminary Matters

Petitioners allege subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (original jurisdiction), 5 U.S.C. § 702 (waiver of sovereign immunity), 28 U.S.C. § 2241 (habeas jurisdiction), and Article I, Section 9, Clause 2 of the United States Constitution (the Suspension Clause). (Doc. 1 at ¶ 6).

Petitioners filed this action paying the requisite $5.00 filing fee for a habeas action, not the $400.00 filing fee applicable to a civil rights action. Petitioners do not claim that ICE wrongfully detained them or that the duration of their current detention by ICE is unlawful. *See generally* (Doc. 1). Rather, Petitioners claim that the generally inadequate conditions at Glades and Baker pose an increased risk of them contracting COVID-19 due to their respective medical infirmities. *Id.*

Petitioners frame their Motion as one seeking a temporary restraining order. However, Petitioners are actually seeking an indefinite release from detention. The aim of a temporary restraining order is to freeze circumstances in place until a Court can consider further action. Temporary restraining orders are effective for a maximum of fourteen days. Fed. R. Civ. P. 65(b)(2). Thus, the requested relief is more properly considered through a motion seeking a preliminary injunction, after affording the respondent notice and a proper hearing. *See* Fed. R. Civ. P. 65(a)(2). If the court finds the issues are primarily questions of law and the material facts are not "bitterly disputed," an evidentiary hearing is not required. *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311-13 (11th Cir. 1998).

**A. Related Litigation**

The Court takes judicial notice of other similar cases concerning the conditions of confinement at several ICE detention facilities in Florida, including Glades. In some cases injunctive relief has been granted, in others it had been denied. *See Gayle v. Meade*, No. 20-21553, 2020 WL 1949737, at *4 (S.D. Fla. Apr. 22, 2020), *report and recommendation adopted in part,* 2020 WL 2086482 (S.D. Fla.

Apr. 30, 2020), *order clarified*, 2020 WL 2203576 (S.D. Fla. May 2, 2020)(granting injunctive relief). *See Matos v. Lopez Vega*, No. 20-CIV-60784-RAR, 2020 WL 2298775 (S.D. Fla. May 6, 2020)(denying injunctive relief).

And the Central District of California – in addition to ordering injunctive relief against ICE – the court certified a subclass of *all* ICE detainees throughout the entire country whose disabilities place them at heightened risk of severe illness and death upon contracting the COVID-19 virus. *Fraihat v. U.S. Immigration & Customs Enf't*, No. EDCV 19-1546-JGB (SHKx), 2020 WL 1932570, at *28 (C.D. Cal. Apr. 20, 2020). As further discussed below, five of the seven Petitioners have been identified as *Fraihat* subclass members by ICE's Enforcement and Removal Operations ("ERO") due to their respective health issues.

**B. Material Facts**

The Court need not reiterate the history, transmission, or impact of COVID-19 and finds it is well documented in the pleadings before it. *See, e.g.*, (Docs. 1-1; 1-2; 29). It is undisputed for purposes of this motion that COVID-19 is currently a global viral pandemic with no known cure or vaccine. Due to its transmission from person to person by respiratory droplets and surface contamination, everyone is at risk of infection. Individuals with underlying health conditions – such as heart, lung, or liver disease, diabetes, or advanced age – are at greater risk if exposed to the virus.

Petitioner **St. Louis** is a native of the Bahamas and a citizen of Haiti and, at the time of Petition's filing, was detained at Glades since June 2019. (Doc. 1 at ¶ 8).

St. Louis is 40 years old and alleges to suffer from diabetes, high blood pressure and kidney failure. (*Id*.). St. Louis went into a diabetic coma earlier this month. (Doc. 17 at 5). He is subject to removability under Section 237(a)(2)(B)(i) for a conviction for a controlled substance violation. (Castano Aff. at ¶ 25). St. Louis' appeal before the Board of Immigration Appeals remains pending. (*Id.).* ICE identified St. Louis as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination, but ICE determined St. Louis will remain in custody because he is subject to mandatory detention under Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). (*Id*. at ¶ 26). Due to his identification in the *Fraihat* subclass, he is part of the "chronic care clinic" and "is evaluated on a routine basis." (*Id*. at ¶¶ 26, 37). On May 20, 2020, ICE transferred St. Louis to the custody of Lee County Sheriff's Office based upon an outstanding state warrant. (*Id*. at ¶ 27). ICE has placed a detainer on St. Louis. (*Id*.).

Petitioner **Macias-Arredondo** is a native and citizen of Colombia and has been detained at Glades since February 2020. (Doc. 1 at ¶ 9). Macias is 41 years old former smoker and claims to suffer from hypertension and to have had past hospitalizations for spinal disorders. (*Id*; Doc. 1-13). Macias was paroled into the United States in 2018. (Castano Aff. at ¶ 34). He was detained by ICE on February 11, 2020, and he was processed for Expedited Removal under 8 U.S.C. § 1225(b)(1). (*Id*.). DHS charged Petitioner as an arriving alien under Section 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an intending immigrant without a proper admission document. (*Id*.). Macias' removal proceedings are pending, and a merits hearing is

scheduled on his applications for relief from removal for June 8, 2020. (*Id*. at ¶ 35). Macias was not identified as a *Fraihat* subclass member because he has no documented history of surgery, hypertension diagnosis, or smoking. (*Id*. at ¶ 36). His last blood pressure reading at Glades was normal (118/80). (*Id*.). ICE provided Macias' attorney of record with the documentation required to apply for parole. (*Id*.).

Petitioner **Theophilus Bucknor** is a native and citizen of Nigeria and has been detained by ICE since March 2020, first at Glades and then at Baker after transfer on April 28, 2020. (Doc. 1 at ¶ 10). Bucknor is 62 years old and alleges to suffer from type-II diabetes. (Doc. 1-9). He was charged as removable under section 237(a)(2)(E)(i) of the INA as an alien who after admission had been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment. (Smith Aff. at ¶ 27). On November 21, 2018, the Board of Immigration Appeals dismissed Bucknor's appeal, and his removal order became final. (*Id*.). Bucknor is being processed for removal, and ERO has a pending request for a travel document. (*Id*. at ¶ 28). ICE identified Bucknor as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination. (*Id*.). Bucknor remains detained under 8 U.S.C. § 1231(a)(2). (*Id*.).

Petitioner **Wilkens Dorival** is a native and citizen of Haiti and has been detained by ICE since March 2020, first at Glades and then at Baker after transfer on April 28, 2020. (Doc. 1 at ¶ 11). Dorival is 24 years old and claims to suffer from high blood pressure, obesity, anxiety, major depressive disorder, and schizophrenia.

(*Id.*; Doc. 1-10). Dorival has several convictions for various offenses. (Smith Aff. at ¶¶ 30-36). Recently, on May 16, 2019, Dorival was convicted for the offenses of Battery on a Law Enforcement Officer, Possession of Three Grams or Less of Synthetic Cannabis, and Possession of Drug Paraphernalia, in violation of §§ 784.07(2)(B), 893.13(6)(B) and 893.147(1), *Florida Statutes*, for which he was sentenced to fifteen months of incarceration. (*Id.* at ¶ 35). Dorival was charged as removable under sections 237(a)(2)(A)(ii), 237(a)(2)(B)(i), and 237(a)(2)(A)(iii) of the INA. (*Id.* at ¶ 37). On August 26, 2019, an Immigration Judge sustained the three charges of removability. (*Id.* at ¶ 38). Dorival's removal proceedings remain pending. (*Id.*). To decrease the overall detainee population and because of his June 5, 2020, hearing with the immigration judge, Dorival was transferred from Baker to Krome's Special Processing Center on May 15, 2020. (*Id.* at ¶¶ 38, 40).

Petitioner **Mark Anthony Montaque** is a native and citizen of Jamaica and has been detained at Glades since February 2020. (Doc. 1 at ¶ 12). Montaque is 54 years old and claims to suffer from emphysema and is HIV positive. (*Id.*; Doc. 1-11). On February 3, 2020, Montaque was charged with removability under Section 237(a)(2)(E) of the INA, as amended, based upon his prior conviction for a crime of child abuse, neglect or abandonment. (Castano Aff. at ¶ 32). On May 6, 2020, Montaque filed a continuance for review of his Notice to Appear, and his case is scheduled for June 8, 2020. (*Id.*). ICE identified Montaque as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination, but ICE determined Montaque will remain in custody because he is subject to mandatory detention

under Section 236(c) of the INA. (*Id.* at ¶ 33). Due to his identification in the *Fraihat* subclass, he is part of the "chronic care clinic" and "is evaluated on a routine basis." (*Id.* at ¶¶ 33, 37).

Petitioner **Lennox Robinson** is a native and citizen of Jamaica and has been detained at Glades since December 2019. (Doc. 1 at ¶ 13). Robinson is 26 years old and alleges to suffer from moderate to severe asthma for which he has past hospitalizations. (*Id*; Doc. 1-12). In July 2019, Robinson was convicted of Carrying a Concealed Firearm in Broward County, Florida, for which he received an 11-month term of probation. (Castano Aff. at ¶ 30). DHS charged Robinson with removability under Section 237(a)(2)(C), based upon his conviction after admission for a firearms offense. (*Id.*). On January 22, 2020, an immigration judge determined Robinson is ineligible for a custody redetermination because his criminal conviction makes him subject to mandatory detention under Section 236(c) of the INA. (*Id.*). Petitioner is scheduled to appear before an immigration judge for a hearing on his applications for relief from removal on July 1, 2020. (*Id.*). ICE identified Robinson as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination, but ICE determined Robinson will remain in custody because he is subject to mandatory detention under Section 236(c) of the INA. (*Id.* at ¶ 31). Due to his identification in the *Fraihat* subclass, he is part of the "chronic care clinic" and "is evaluated on a routine basis." (*Id.* at ¶¶ 31, 37).

Petitioner **Romaine Wilson** is a native and citizen of Jamaica and has been detained at Glades since October 2019. (Doc. 1 at ¶ 14). Wilson is 26 years old and

alleges to suffer from grand mal seizures. (*Id*; Doc. 1-14). In October 2019, DHS served Wilson with a Notice to Appear, charging him with removability under Section 237(a)(2)(A)(ii) for his convictions for two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (Castano Aff. at ¶ 28). On April 20, 2020, an immigration judge sustained the charge, and denied Wilson's applications for relief from removal. (*Id*.). Petitioner did not appeal his case, which became final on May 21, 2020. (*Id*.). ICE identified Wilson as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination, but ICE determined Wilson will remain in custody because he is subject to mandatory detention under Section 236(c) of the INA. (*Id*. at ¶ 29). Due to his identification in the *Fraihat* subclass, he is part of the "chronic care clinic" and "is evaluated on a routine basis." (*Id*. at ¶¶ 29, 37).

Petitioners and the *Amici* present data and information about COVID-19 and its potential impact upon detention facilities or correctional facilities generally. *See, e.g*., (Docs. 1-4; 1-15; 29). Specific complaints about Glades and Baker gleaned from the Declarations attached to the Petition include concerns that: Petitioners cannot maintain six-feet distance from other detainees while in their dormitories or while eating; there have been several instances of guards, staff, and other detainees not wearing masks at various times; detainees are regularly being transported into and out of the facility; supplies of toilet paper and soap have periodically run out and have not been replenished immediately; detainees must share toilet and shower facilities; limited or no information was being provided to the detainees about

COVID-19; people are coughing and complaining of having fevers, headaches, and bone aches; sinks and toilets have broken; and although masks are being provided, they are not being replaced weekly. *See, e.g.*, (Docs. 1-3; 1-5; 1-6; 1-7; 1-8; 1-9; 1-10; 1-11; 1-12; 1-13; 1-14; 17-1).

Respondents attest to the efforts and protocols that have been implemented to minimize the spread of COVID-19 at Glades and Baker. *See* (Smith Aff. at ¶¶ 4-24; Castano Aff. at ¶¶ 4-23). On April 10, 2020, ERO released its *ERO Covid-19 Pandemic Response Requirement* (PRR), which sets forth mandatory requirements to be adopted at all detention facilities to ensure detainees are "appropriately housed" and "mitigation measures are implemented during this pandemic." (Smith Aff. at ¶ 8). Glades and Baker both follow the PRR, as well as the Interim Guidance on Management of Coronavirus 2019 in Correctional and Detention Facilities issued by the Centers for Disease Control ("CDC"). (Smith Aff. at ¶¶ 6-8; Castano Aff. at ¶¶ 5-7). As of May 21, 2020, Baker was operating at 68% of capacity and Glades was operating at 73% capacity. (Smith Aff. at ¶ 15; Castano Aff. at ¶ 14). All detainees at Baker and Glades are issued masks, which are exchanged weekly. (Smith Aff. at ¶16; Castano Aff. at ¶ 17). As of May 20, 2020, these were no suspected or confirmed cases of COVID-19 among detainees or staff at Baker, and no suspected or confirmed case among detainees and only one confirmed case of COVID-19 of a Sheriff's Deputy who is no longer on the schedule. (Smith Aff. at ¶ 14; Castano Aff. at ¶13). Due to the Deputy's positive test, Glades cohorted 336

detainees, consistent with its established protocols, as a precaution.[4] (Castano Aff. at ¶ 13).

## III. Legal Standard

Because a temporary restraining order is an extraordinary remedy, the movant must establish the following four criterion: (1) a substantial likelihood of success on the merits, (2) irreparable injury if the relief is not granted, (3) the issuance of an injunction would not substantially harm the other litigant(s), and (4) the injunction is not adverse to the public interest. *Long v. Sec'y, Dep't of Corrs.*, 924 F.3d 1171, 1176 (11th Cir. 2019). The same factors govern the issuance of a preliminary injunction. *See Swain v. Junior*, No. 20-11622-C, 2020 WL 2161317, at *3 (11th Cir. May 5, 2020) (citing *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016)). Recognizing that such requests "are not uncommon in federal court and sometimes involve decisions affecting life and death," such relief may not be granted "unless the [movant] establishes the substantial likelihood of success criterion." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005). The Eleventh Circuit has held that the issuance of a temporary restraining order "is the exception rather than the rule." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)). With these parameters in mind, the Court considers the Motion for Temporary Restraining Order.

---

[4] In cases of known exposure, exposed detainees who are asymptomatic are placed in cohorts with restricted movement for 14 days. (Castano Aff. at ¶ 11). During this time, detainees are checked twice daily for fever or any symptoms of respiratory illness. (*Id.*).

## IV. Analysis

### A. Release as Relief

As previously noted, this case is but one of many similar cases filed throughout the nation seeking similar injunctive relief by challenging the adequacy of disease prevention methods and conditions in ICE detention centers due to the COVID-19 pandemic. Recently, the Southern District of Florida addressed at length a complaint lodged by four detainees housed at the Broward Transitional Center ("BTC") in Pompano Beach, Florida who, like the Petitioners, suffered from various preexisting medical conditions and sought release on the basis that their detention violated the Fifth Amendment Due Process Clause. *See Matos v. Lopez Vega*, No. 20-CIV-60784-RAR, 2020 WL 2298775 (S.D. Fla. May 6, 2020). While not binding, the Court finds the analysis in *Matos* to be correct and persuasive.

Although framed as a habeas corpus petition, the Court finds the pleading before it to be a quintessential "conditions of confinement" claim rather than a habeas claim. *See id*. at *5-6. As noted by the court in *Matos,* Eleventh Circuit law prohibits release as remedy for conditions of confinement claims.[5] *See id.* at *10 (citing *Gomez v. United States*, 899 F.2d 1124, 1125-26 (11th Cir. 1990)); *see also Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) (*per curiam*). The Court further finds the *Matos* Court's analysis of the Fifth Amendment arguments legally correct and applicable to the issues before this Court.

---

[5] *See also Archilla v. Witte*, No. 4:20-cv-00596-RDP-JHY, 2020 WL 2513648 (N.D. Ala. May 15, 2020).

Petitioners attempt to distinguish *Matos* on its facts by pointing out that the declarations in *Matos* had been submitted by individuals who had not been at the facility for some time. (Doc. 32 at 6). Petitioners argue that the declarations here describe "*current* troubling conditions." (*Id.*) (emphasis in original). Petitioners also seek to differentiate the facts in *Matos* because the detainees there were also subject to a final order of removal, and deportation was expected within a month.[6] (*Id.*). The Court disagrees and finds that the factual differences noted here are insufficient to warrant a different outcome.

Petitioners have provided no facts or evidence to support an inference, yet alone a finding, that the conditions of which they complain amount to punishment that would support a Fifth Amendment violation. Nothing in the record suggests that that instances complained of, or reported, were persistent, as opposed to sporadic isolated events. No evidence has been presented that requests for replenishments of cleaning supplies, toiletries or masks have been refused, or that officials are not following or enforcing the protocols mandated by the PRR or recommended by the CDC when violations are brought to their attention. Indeed, there is no evidence for the Court to infer that the events of which Petitioners complain were intended as punishment. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

[6] Instead three of the Petitioners have hearings scheduled for June and early July that require their appearance before an immigration judge, which weighs in favor or continuing their detention.

Instead, the evidence suggests the opposite: efforts have been made to curb the introduction of the virus into both facilities and the efforts, thus far, appear to have been successful. Protective equipment and increased cleaning protocols have been introduced, measures to alter eating and sleeping arrangements to maximize social distancing has been implemented, access to the facilities from outside visitors has been reduced, and in some cases eliminated, and detailed procedures and screenings exist for personnel and new detainees entering the facility.

Significantly, Petitioners do not demonstrate a substantial likelihood of success on the merits, which is fatal to a motion seeking preliminary injunctive relief. Because Petitioners must satisfy all four criterion, and the Court finds Petitioners have failed to demonstrate a substantial likelihood of success on the merits, the remaining factors need not be addressed. *See CBS Broad v. Echostar Communs. Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001).

**B. Prohibit Transfer as Relief**

Petitioners alternatively request that ICE be prohibited from transferring Petitioners to other detention facilities unless such transfer is required by another judicial proceeding. (Doc. 17 at 25). In support, Petitioners complain that Petitioner Dorival was transferred to Krome, without advance notice, on May 15, 2020. (Doc. 17-1 at ¶ 2). Respondents explain that Dorival was transferred to Krome due to an upcoming hearing before an immigration judge, scheduled for June 5, 2020. (Doc. 28 at 3). Thus, ICE appears to have transferred Dorival for the very reason that Petitioners agree a detainee should be permitted to transfer.

Respondents also advise that Petitioner St. Louis was transferred due to an outstanding state warrant. (*Id.* at 4). But there is no evidence that ICE is transferring detainees for retaliatory purposes. Paradoxically, Petitioners fault ICE for keeping them in conditions they describe as constituting "unconstitutional punishment" (Doc. 32 at 5) but wish to prevent their transfer from these very same facilities. Similarly, they complain that the facilities are overcrowded and argue the populations at the facilities should be reduced, while simultaneously seeking to prohibit transfers which would necessarily reduce population. Petitioners have made no showing that Respondents are transferring Petitioners for improper purposes, and it is not the Court's function to second-guess administrative decisions, especially in an institutional setting. *Swain*, 2020 WL 2161317, at *4 (emphasizing that courts should not assume role of "super-warden"). Because the Court finds Petitioners have not demonstrated a substantial likelihood of success on the merits, the Court will not "hamstring" ICE officials with the additional burden of seeking the Court's permission prior to transferring Petitioners. *See id.*

Accordingly, is hereby **ORDERED**:

Petitioners-Plaintiffs' Motion for Temporary Restraining Order (Doc. 19) is **DENIED in its entirety**.

**DONE** and **ORDERED** in Fort Myers, Florida on May 27, 2020.

TOM BARBER
UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies furnished to:
Counsel of Record