# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

HERAUD ST. LOUIS, LUIS
MACIAS-ARREDONDO,
THEOPHILUS BUCKNOR,
DORIVAL WILKENS, MARK
ANTHONY MONTAQUE,
ROMAINE ODEAN WILSON, and
LENNOX ROBINSON,

      Petitioners,

v.                                    Case No:   2:20-cv-349-FtM-60NPM

JIM MARTIN, in his official
capacity as Field Office Director,
Enforcement and Removal
Operations, Miami Field Office,
U.S. Immigration and Customs
Enforcement, et al.,

      Respondents.

---

## ORDER DENYING "VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF"

Petitioners, seven immigration detainees, filed a "Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief" on May 19, 2020. (Doc. 1, "Petition").[1] This hybrid pleading

---

[1] Petitioners attach the following exhibits in support of the Petition: Declaration of Dr. Julie Deaun Graves (Doc. 1-1); Declaration of Joseph J. Amon, Ph.D., MSPH (Doc. 1-2); Declaration of Francis L. Conlin (Doc. 1-3); Declaration of Dr. Dora Schriro (Doc. 1-4); Declaration of Cassandra Paniahua (Doc. 1-5); Declaration of Vilerka S. Bilbao (Doc. 1-6); Declaration of Roberto Cabrera Lopez (Doc. 1-7); Declaration of Petitioner Heraud St. Louis (Doc. 1-8); Declaration of Petitioner Theophilus Bucknor (Doc. 1-9); Declaration of Petitioner Wilkens Dorival (Doc. 1-10); Declaration of Petitioner Mark Anthony Montaque (Doc. 1-11);

seeks Petitioners' release because the conditions of the Petitioners' confinement expose them to an unreasonable risk of infection in violation of the Due Process Clause. *See generally* (Doc. 1). Petitioners request no other form of injunctive relief than release from their continued detention by Immigration and Custom's Enforcement ("ICE"). (*Id*. at 4, ¶ 5; 38-39). Respondents filed a "Response to Petition for Habeas Corpus and Complaint" on May 31, 2020. (Doc. 34, "Response").[2] Petitioners filed a "Reply in Support of Certified Petition for Writ of Habeas Corpus and Complaint on June 3, 2020. (Doc. 35, "Reply").[3] The Court permitted the parties to file supplemental declarations to reflect changed circumstances since filing their Response and Reply. (Doc. 37). The Court

---

Declaration of Petitioner Lennox Robinson (Doc. 1-12); Declaration of Petitioner Luis Macia Arredondo (Doc. 1-13); Declaration of Petitioner Romaine Odean Wilson (Doc. 1-14); Declaration of Amoen Kacou with exhibits (Doc. 1-15).

[2]Respondents attach the following exhibits in support of the Response: Supplemental Declaration of Assistant Field Office Director Cardell C. Smith dated May 29, 2020 (Doc. 34-1); Declarations of Assistant Field Office Director Liana J. Castano dated May 22, 2020 (Doc. 34-2), dated May 31, 2020 (Doc. 34-3), dated May 31, 2020 (Doc. 34-4) and dated June 4, 2020 (Doc. 34-5). Doc. 34-5 was filed pursuant to the Court's June 8, 2020 Order granting Joint Motion. *See* (Doc. 37).

[3]Petitioners attach the following exhibits in support of the Reply: Supplemental Declaration of Amien Kacou with ERO-U.S. Immigration and Customs Enforcement and Removal Operations COVID-19 Pandemic Response Requirement (Version 1.0, April 10, 2020) (Doc. 35-1); Supplemental Declaration of Petitioner Theophilus Bucknor (Doc. 35-2); Supplemental Declaration of Petitioner Romaine Odean Wilson (Doc. 35-3); Supplemental Declaration of Petitioner Lennox Robinson (Doc. 35-4); Supplemental Declaration of Petitioner Mark Anthony Montaque (Doc. 35-5); Supplemental Declaration of Petitioner Wilkens Dorival (Doc. 35-6); Amended Supplemental Declaration of Petitioner Romain Odean Wilson dated June 4, 2020 (Doc. 35-8); Second Supplemental Declaration of Amien Kacou dated June 5, 2020 (Doc. 35-9). Docs. 35-8 and 35-9 were filed pursuant to the Court's June 8, 2020 Order granting Joint Motion. *See* (Doc. 37).

accepted the Brief of *Amici Curiae* Public Health and Human Rights Experts. (Doc. 29, "*Amici* Brief"). After carefully considering the pleadings and other submissions and, as more fully set forth below, the Court denies the Petition.

I. **FACTUAL OVERVIEW**

Petitioners filed the Petition against the backdrop of the COVID-19 global pandemic. At the time of the Petition's filing, Petitioners were detained at Glades County Detention Center in Moore Haven, Florida ("Glades") or Baker County Detention Center in MacClenny, Florida ("Baker"). The Petitioners each claim to suffer from "preexisting medical conditions and/or age" that make them "highly vulnerable to serious illness or death from COVID-19." (Doc. 1, ¶ 1). Petitioners argue that the conditions of their confinement at Glades and Baker increase their risk of contracting COVID-19. (*Id.*, ¶ 35). As relief, Petitioners ask the Court to declare that Petitioners' substantive due process rights have been violated and order Petitioners released from continued detention by ICE. (*Id.* at 35-37).

On May 26, 2020, the Court denied Petitioner's Motion for Temporary Restraining Order seeking immediate release. (Doc. 33). The Court concluded Eleventh Circuit law prohibits release as a remedy for a conditions of confinement claim. (*Id.* at 13). The Court alternatively concluded that Petitioners were unlikely to prevail on their Fifth Amendment due process claim. (*Id.* at 14-15).

Neither party denies the seriousness of COVID-19, its contagiousness, or that it poses unique challenges to officials tasked with operating facilities who house large groups of people in close quarters such as prisons or jails. (*See* Docs. 1-4; 1-

15; 29). Other courts have addressed the impact of COVID-19 at various ICE detention facilities. The Central District of California – besides ordering injunctive relief against ICE – certified a subclass of *all* ICE detainees throughout the entire country whose disabilities place them at heightened risk of severe illness and death upon contracting the COVID-19 virus. *Fraihat v. U.S. Immigration & Customs Enf't*, No. EDCV 19-1546-JGB (SHK), 2020 WL 1932570, at *28 (C.D. Cal. Apr. 20, 2020). The *Fraihat* court required ICE to "make timely custody determinations for detainees with Risk Factors, per the latest Docket Review Guidance. In making their determinations, Defendants should consider the willingness of detainees with Risk Factors to be released, and offer information on post-release planning, which Plaintiffs may assist in providing." *Id*. at *29. All but one of the Petitioners have been identified as a member of the *Fraihat* subclass and are part of the ICE's "chronic care clinic" and are "evaluated on a routine basis." (Doc. 34-3, ¶ 27).

The impact caused by the COVID-19 virus and the facts attendant to this case are evolving on a weekly, if not daily basis. Since the Petition's filing, ICE transferred two of the Petitioners out of Baker and Glades. Since the Petition's filing, at least one Petitioner has tested positive for COVID-19. Since the Petition's filing, ICE implemented new procedures and protocols to address COVID-19 at its facilities, including Baker and Glades; nonetheless ICE was subjected to a preliminary injunction issued by the Southern District of Florida concerning its oversight and management of its facilities at Glades, Krome, and Broward Transition Center. *See Gayle v. Meade*, No. 20-21553-CIV, 2020 WL 3041326, at

\*23 (S.D. Fla. June 6, 2020).  The *Gayle* court also certified as a class all civil immigration detained individuals held at Krome, Glades and Broward Transition Center "when the action was filed,[4] since the action was filed, or in the future."  *Id*. All Petitioners appears to be part of the class certified by the *Gayle* court. Recognizing the state of affairs in this case will never be stagnant, the Court takes a snapshot as of this date to delineate the current facts to rule on this matter.

### A.   Petitioners

**Heraud St. Louis** is a native of the Bahamas and a citizen of Haiti, who was detained by DHS in February 2019 and confined at Glades.  (Doc. 34-2, ¶ 25).  The Twentieth Judicial Circuit Court convicted St. Louis for possession of cocaine, marijuana, driving while license suspended or revoked (habitual revocation) in case no. 18-016574.  (*Id*.).  DHS charged St. Louis with removability under Section 237(a)(2)(B)(i) for a conviction for a controlled substance violation.  (*Id*.).  St. Louis' appeal before the Board of Immigration Appeals remains pending.  (*Id*.).

St. Louis is 40 years old and alleges to suffer from diabetes, high blood pressure and kidney failure.  (Doc. 1, ¶ 8.).  ICE identified St. Louis as a *Fraihat v. ICE* subclass member and he has undergone a custody determination, but ICE determined St. Louis would remain in custody because he is subject to mandatory detention under Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c).  (Doc. 34-2, ¶ 26).  On May 20, 2020, ICE transferred custody of St. Louis to the Lee County Sheriff based upon an outstanding state warrant.  (*Id*.,

---

[4] The Petition in *Gayle* was filed on April 13, 2020.

¶ 27). ICE has placed a detainer on St. Louis. (*Id.*). Despite his transfer, it appears St. Louis would also be a member of the *Gayle v. Meade* class because he was detained at Glades when the case was filed.

**Macias-Arredondo** is a native and citizen of Colombia, who was paroled into the United States in 2018. (Doc. 34-2, ¶ 34). On February 11, 2020, DHS detained and processed Macias for Expedited Removal under 8 U.S.C. § 1225(b)(1). (*Id.*). DHS charged Macias as an arriving alien under Section 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an intending immigrant without a proper admission document. (*Id.*). Macias has a federal conviction for Possession with Intent to Distribute a Quantity of Cocaine. (*Id.*, ¶ 35). A hearing on Macias application for relief from removal was scheduled for June 8, 2020. (*Id.*).

Macias is 41 years old and claims to be a former smoker who suffers from hypertension and to have had past hospitalizations for spinal disorders. (Doc. 1, ¶ 9); Doc. 1-13). ICE has not identified Macias as a subclass member in *Fraihat v. ICE* and disputes that Macias has a documented history of surgery, hypertension diagnosis or smoking. (Doc. 34-2, ¶ 36). ICE states that Macias' last blood pressure reading at Glades was normal (118/80) but does not provide the date the blood pressure was recorded. (*Id.*). ICE provided Macias' attorney of record with the documentation required for Macias to apply for parole. (*Id.*). Petitioners do not state whether Macias submitted the paperwork. Macias would be a member of the *Gayle v. Meade* class.

**Theophilus Bucknor** is a native and citizen of Nigeria, who DHS detained in March 2020 and has been confined at Baker since April 29, 2020. (Doc. 1, ¶ 10). Before April 29, 2020, Buchnor was detained at Glades. (*Id.*). DHS charged Bucknor as removable under section 237(a)(2)(E)(i) of the INA as an alien who after admission had been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment. (Doc. 34-1, ¶ 27). On November 21, 2018, the Board of Immigration Appeals dismissed Bucknor's appeal, and his removal order became final. (*Id.*). Bucknor claims he moved to reopen his removal case, which remains pending. (Doc. 35-2, ¶ 13).

Bucknor is 62 years old and alleges to suffer from type-II diabetes. (Doc. 1-9). ICE identified Bucknor as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination. (Doc. 34-1, ¶ 28). Bucknor remains detained under 8 U.S.C. § 1231(a)(2), is being processed for removal, and ERO has a pending request for a travel document. (*Id.*). Despite being confined in Baker, it appears Bucknor would be a member of the *Gayle v. Meade* class because he was detained at Glades when the case was filed.

**Wilkens Dorival** is a native and citizen of Haiti, who DHS detained in March 2020 and confined at Baker from April 29, 2020, until his transfer to Krome Service Processing Center on May 15, 2020. (Doc. 1, ¶ 11; Doc. 34-1, ¶¶ 37-40). The Circuit Court in the Ninth Judicial Circuit convicted Dorival for various offenses on these dates: June 15, 2012 (case no. 11-CF-015481), June 15, 2012 (case no. 11-CF-015738), June 28, 2012 (case no. 12-CF-005924), June 28, 2012

(case no. 12-CF-005924), November 27, 2012 (case no. 12-MM-010019), and March 11, 2015 (case no. 14-CF-010681).  (Doc. 34-1, ¶¶ 30-34).  Recently, on May 16, 2019, Dorival was convicted for the offenses of Battery on a Law Enforcement Officer, Possession of Three Grams or Less of Synthetic Cannabis, and Possession of Drug Paraphernalia, in violation of §§ 784.07(2)(B), 893.13(6)(B) and 893.147(1), *Florida Statutes*, for which he was sentenced to fifteen months of incarceration. (*Id.*, ¶ 35).  DHS charged Dorival as removable under sections 237(a)(2)(A)(ii), 237(a)(2)(B)(i), and 237(a)(2)(A)(iii) of the INA, as an alien convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, as an alien convicted of a controlled substance other than a single offense involving possession for one's own use of 30 grams or less of marijuana, and as an alien convicted of an aggravated felony as defined under section 101(a)(43)(F) of the INA.  (*Id.*, ¶ 37).  On August 26, 2019, an immigration judge sustained the three charges of removability.  (*Id.*, ¶ 38).  ICE transferred Dorival from Baker to Krome's Special Processing Center ("Krome") on May 15, 2020 for his June 5, 2020 hearing before an immigration judge.  (*Id.*, ¶¶ 38, 40).

Dorival is 24 years old and claims to suffer from high blood pressure, obesity, anxiety, major depressive disorder, and schizophrenia.  (Doc. 1, ¶ 11.; Doc. 1-10). ICE identified Dorival as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination.  (Doc. 34-1, ¶ 39).  Dorvil remains detained under 8 U.S.C. § 1226(c).  (*Id.*).  Dorival would be a member of the *Gayle v. Meade* class.

**Mark Anthony Montaque** is a native and citizen of Jamaica and has been detained at Glades since February 4, 2020. (Doc. 34-2, ¶ 32). In 2020, the circuit court in Hillsborough County convicted Montaque of offense of child neglect in case no. 17-CF-002401. (*Id.*). DHS charged Montaque on February 3, 2020, with removability under Section 237(a)(2)(E) of the INA, as amended, based upon his prior conviction for a crime of child abuse, neglect or abandonment. (*Id.*). Montaque filed a continuance for review of his Notice to Appear, and his case was rescheduled for June 8, 2020. (*Id.*).

Montaque is 54 years old and claims to suffer from emphysema and is HIV positive. (Doc. 1, ¶ 12; Doc. 1-11). ICE identified Montaque as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination, but ICE determined Montaque will remain in custody because he is subject to mandatory detention under 8 U.S.C. § 1226(c). (*Id.*, ¶ 33). Montaque would be a member of the *Gayle v. Meade* class.

**Lennox Robinson** is a native and citizen of Jamaica, who was admitted to the United States as a lawful permanent resident. (Doc. 34-2, ¶ 30). In July 2019, Robinson was convicted of Carrying a Concealed Firearm in Broward County, Florida, for which he received an 11-month term of probation. (*Id.*). In December 2019, DHS detained Robinson and confined him at Glades charging him with removability under Section 237(a)(2)(C), based upon his conviction after admission for a firearms offense. (*Id.*). On January 22, 2020, an immigration judge determined Robinson is ineligible for a custody redetermination because his

criminal conviction makes him subject to mandatory detention under Section 236(c) of the INA.  (*Id.*).  Robinson is scheduled to appear before an immigration judge for a hearing on his applications for relief from removal on July 1, 2020.  (*Id.*).

Robinson is 26 years old and alleges to suffer from moderate to severe asthma for which he has past hospitalizations.  (Doc. 1, ¶ 13; Doc. 1-12).  ICE identified Robinson as a subclass member in *Fraihat v. ICE* and he has undergone a custody determination, but ICE determined Robinson will remain in custody because he is subject to mandatory detention under Section 236(c) of the INA.  (Doc. 34-2, ¶ 31).  Robinson would be a member of the *Gayle v. Meade* class.

**Romaine Odean Wilson** is a native and citizen of Jamaica and has been confined at Glades since October 2019.  (Doc. 34-2, ¶ 28).  In 2014, Wilson was convicted of attempted Robbery with a Weapon in Broward County and sentenced to five years' probation.  (*Id.*).  In 2019, Wilson was convicted of Dealing in Stolen Property and False Verification of Ownership to Pawn Broker in Broward County.  (*Id.*).  In October 2019, DHS served Wilson with a Notice to Appear, charging him with removability under Section 237(a)(2)(A)(ii) for his convictions for two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.  (*Id.*).  On April 20, 2020, an immigration judge sustained the charge, and denied Wilson's applications for relief from removal.  (*Id.*).  Petitioner did not appeal his case, which became final on May 21, 2020.  (*Id.*).

Wilson is 26 years old and alleges to suffer from grand mal seizures.  (Doc. 1, ¶ 13; Doc. 1-14).  ICE identified Wilson as a subclass member in *Fraihat v. ICE* and

he has undergone a custody determination, but ICE determined Wilson will remain in custody because he is subject to mandatory detention under 8 U.S.C. § 1231. (*Id.*, ¶ 29).   Medical staff at Glades informed Wilson he tested positive for COVID-19 on June 4, 2020.   (Doc. 36-2, ¶ 2).   Wilson would be a member of the *Gayle v. Meade* class.

### B.   The ICE Facilities:   Baker, Glades, and Krome

As of this Order, Petitioners Macias, Montaque, Robinson and Wilson remain confined at Glades.   Petitioner Bucknor is confined at Baker and Petitioner Dorival is confined at Krome SPC.   Respondents attest to the efforts and protocols implemented to minimize the spread of COVID-19 at each facility.   *See* (Docs. 34-1, 34-2, 34-3 and 34-4).   All three facilities have implemented measures to reduce their population.   As of May 29, 2020, Baker was operating at 69% of capacity and had zero suspected or confirmed cases of COVID-19 among detainees and staff. (Doc. 34-1, ¶¶ 14-15).   As of May 30, 2020, Krome and Glades were operating at 60% and 69% capacity, respectively.   (Doc. 34-3, ¶ 13, Doc. 34-4, ¶ 6).   ICE has tried to try to achieve social distancing at each facility.   (Docs. 34-1, ¶ 17; 34-2, ¶¶ 15-16; 34-3, ¶¶ 14-18; and 34-4, ¶ 8).   ICE requires staff to wear masks and issues masks to the detainees, which can be exchanged as needed.   (Doc. 34-1, ¶¶ 16, 22; 34-2, ¶¶ 20; and 34-3, ¶¶ 23, 28-30).   And, ICE has increased sanitation efforts and frequency.   (Docs. 34-1, ¶ 16; 34-2, ¶ 17; and 34-3, ¶ 19).   Other procedures implemented include: restricting social visits, suspending gatherings such as church services, providing detainees with personal hygienic items without cost, screening

all staff and vendors who enter the facilities and requiring them to wear personal protective equipment, and posting educational flyers about the virus in English and Spanish throughout the facilities. (Docs. 34-1, ¶¶ 16, 17-22; 34-2, ¶¶ 18-22; and 34-3, ¶¶ 23, 28-30). Further, all staff entering the facilities are subject to screening, including temperature readings, must wear PPE, and must regularly use hand-sanitizer. (Docs. 34-1, ¶ 20; 34-2, ¶¶ 19- 20; and 34-3, ¶¶ 22-23).

Despite these efforts, there were 61 confirmed positive cases of COVID-19 among detainees and 11 cases among Sheriff deputies as of June 4, 2020 at Glades. (Doc. 36-2, ¶ 4; Doc. 34-5, ¶ 5). Consistent with the established protocols, 320 detainees were being cohorted until June 15, 2020. (Doc. 34-5, ¶ 5). Due to the uptick in confirmed COVID-19 positive cases, Glades in not accepting new detainees and is not accepting transfers. (*Id.*, ¶ 6). As of May 30, 2020, Krome had identified 2 confined COVID-19 detainee cases and 12 staff cases. (Doc. 34-3, ¶ 12). Because of the positive cases and consistent with protocols, 5 groups of detainees were being cohorted at Krome. (*Id.*).

## II.  ANALYSIS

### A.  Jurisdiction

Petitioners allege subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (original jurisdiction), 5 U.S.C. § 702 (waiver of sovereign immunity), 28 U.S.C. § 2241 (habeas jurisdiction), and Article I, Section 9, Clause 2 of the United States Constitution (the Suspension Clause). (Doc. 1, ¶ 6). Notably, Petitioners paid the requisite filing fee for a habeas action, not a civil

rights action.  *See* (Receipt No. 113A-16804143).  The Court finds jurisdiction under 28 U.S.C. §§ 1131, 2241.

### B.     Mootness

Respondents argue the Court lacks jurisdiction over the claims brought by Petitioners St. Louis and Dorival, both of whom have been transferred since the Petition's filing.  (Doc. 34 at 5).  Petitioners dispute that the Petition is moot as to St. Louis because ICE has lodged a detainer against St. Louis.  (Doc. 35 at 9, n. 11).[5]  As noted above, St. Louis is confined in the Lee County Jail and is in the legal and physical custody of the Lee County Sheriff.  Dorival is confined in Krome but remains under the physical and legal custody of ICE.  The Court finds the Petition is moot as to St. Louis, but not as to Dorival.  Jurisdiction attaches upon the initial filing for habeas corpus relief and jurisdiction is not destroyed upon transferring petitioner and custodial change.

> Once the court has acquired jurisdiction in a habeas corpus proceeding, such jurisdiction continues until the court has performed all acts necessary to grant all relief as is indicated in its jurisdictional power. Even the release of the prisoner from custody prior to completion of proceedings on the application, or transfer of custody to another person or place, will not divest the court of jurisdiction.

39 C.J.S. Habeas Corpus § 285 (Feb. 2020), *citing inter alia, Ex parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943) ("[W]e do not believe that passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for can defeat jurisdiction of the Court to grant or refuse the writ on the

---

[5] Petitioners do not address the issue of mootness as to Dorival.

merits of the application."). The Supreme Court reaffirmed the continuing jurisdiction of the court once the habeas rule is satisfied. "*Endo*[6] stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfield v. Padilla*, 542 U.S. 426, 441 (2004). Respondents state ICE transferred Dorival to Krome for his upcoming hearing before an immigration judge. The Court takes judicial notice that Dorival would be included in the class certified by the Southern District in *Gayle v. Meade* challenging the conditions of confinement at Krome. Thus, the Court finds ICE's transfer of Dorival to Krome does not destroy this Court's jurisdiction to the extent he seeks release as the sole form of injunctive relief from this Court.

St. Louis is now in both legal and sole physical custody of the State of Florida. However, St. Louis predicates the basis of his illegal detention while in

---

[6] *Ex parte Mitsuye Endo* 323 U.S. 283, 304-306 (1944). In *Endo*, a Japanese-American citizen was interned in California by the War Relocation Authority (WRA) and sought relief by filing a § 2241 petition in the Northern District of California, naming as a respondent her immediate custodian. Subsequent to filing the petition, the Government moved Endo to Utah. The Supreme Court held, although the prisoner's immediate physical custodian was no longer within the jurisdiction of the Northern District, the Northern District "acquired jurisdiction in this case and that [Endo's] removal . . . did not cause it to lose jurisdiction where a person in whose custody she is remains within the district." *Id.* at 306. The Court held under these circumstances, the assistant director of the WRA, who resided in the Northern District, would be an "appropriate respondent" to whom the District Court could direct the writ. *Id.* at 304-305.

ICE's custody stemmed from the conditions of his confinement while at Glades. Since St. Louis is no longer confined at Glades, he is not subject to the conditions of which he complains. Thus, the Petition no longer present a case or controversy and the Petition is moot as to St. Louis. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) ("absent class certification" claims seeking injunctive relief for conditions of detainee's confinement are moot once detainee is transferred to different facility).

### C.     Release is Not Appropriate Relief

Not one Petitioner disputes the validity of their underlying prior convictions or disagree that they are subject to mandatory detention by ICE. Instead, Petitioners contend that their confinement during the period necessary to effectuate or challenge their removal violates their substantive Fifth Amendment rights because the current conditions of their confinement arguably subject them to increased risk of death which amounts to punishment and illegal detention. The crux of the issue is whether release is an available form of relief for a conditions of confinement claim. Petitioners insist this is not merely a conditions case. (Doc. 35 at 9). However, the litany of their complaints belies this assertion. *See generally* (Docs. 1, 35). In its Order denying Petitioners' motion for a temporary restraining order, the Court found release was not an appropriate form of relief for a conditions case. *See* (Doc. 33 at 13).

The Court finds Petitioners have presented no authority for this Court to deviate from its prior holding. The Supreme Court, while not foreclosing habeas relief for a conditions of confinement claim, has refused to recognize it as a proper

vehicle to obtain such relief. *Bell v. Wolfish*, 441 U.S. 520, 526 n. 6 (1979) ("Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself."). Recognizing this dictum, the Eleventh Circuit opined that even if a prisoner proves his treatment violates the Eighth Amendment in a habeas corpus action, he "is not entitled to release" as relief. *Gomez v. U.S.*, 899 F.2d 1124, 1125-26 (11th Cir. 1990) (citations omitted). The Eleventh Circuit reiterated that "[c]laims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) (citations omitted). Petitioners do not cite to any precedential authority for this Court to find contrary to *Gomez* and *Vaz* or the dictum in *Bell*. Thus, the Court finds release under § 2241 unavailing when the alleged constitutional violation is predicated upon the conditions of a petitioner's confinement. *See, e.g., Matos v. Lopez Vega*, No. 20-CIV-60784-RAR, 2020 WL 2298775 (S.D. Fla. May 6, 2020); *Vasquez v. Vega*, No. 20-60959-CIV-DIMITROULEAS, 2020 US DIST Lexis 93830 (S.D. Fla. May 27, 2020); *Djadju v. Vega*, No. 20-61060-CIV-DIMITROULEAS, 2020 BL 225243 (S.D. Fla. June 15, 2020); *Buford v. Warden, FCC Colemen - USP I*, No. 5:20-CV-171-Oc-39PRL, 2020 WL 3051316, at *2 (M.D. Fla. June 8, 2020).

### D.     The Conditions Do Not Violate Petitioners' Due Process Rights

Petitioners claim their continued detention by ICE amounts to unconstitutional punishment.   (Doc. 35 at 4-6).   Essentially, Petitioners contend that because Respondents have not cured all the deficient conditions, and arguably cannot correct all deficiencies, release is the only remedy.   (*Id*. at 7-9).   As evidence, Petitioners point to the escalating number of positive COVID-19 cases at Krome and Glades despite Respondents' protocols and efforts to contain and prevent the spread of the virus.   (*Id*. at 9).   Further, Petitioners claim that the conditions cannot be cured because social distancing is impossible due to the inherent nature of the facilities.

The Court finds the Eleventh Circuit's recent COVID-19 conditions of confinement decision in *Swain v. Junior*, No. 20-11622, 2020 WL 3167628 (11th Cir. June 15, 2020) instructive.   Although noting that the Fourteenth Amendment "technically" governs pretrial detainees claims, the Court recognized the pretrial detainees' conditions of confinement claim nonetheless is evaluated under the Eighth Amendment's deliberate indifference standard.   *Id*. at *5.   This standard requires a party to show <u>both</u> that the conditions to which he is subjected pose a substantial risk of serious harm and that official disregards the risks and fails to take reasonable measures to abate the harm.   *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)

Similar to the facts in *Swain*, Respondents do not dispute their awareness of the seriousness of COIVD-19 but argue there is no evidence they have disregarded

Page 17 of 19

the risk or have the culpable state of mind necessary to hold them liable. *See* (Doc. 34 at 9-11). The Court agrees. After considering that the virus has spread, social distancing is not an attainable goal, and crediting the sporadic instances of noncompliance with certain protocols Petitioners identify in their respective declarations and supplemental declarations, the Court nonetheless finds the facts before the Court fall far short of the demonstrating deliberate indifference under the Eighth Amendment or an intent to punish under the Fifth Amendment. The Court must look at the Respondents' "entire course of conduct." *Swain*, 2020 WL 3167628, at *7. Neither the fact that the virus has spread nor that social distancing is not conceivable demonstrate "indifference, let alone deliberate indifference" in light of the reasonable actions implemented by Respondents.[7] *See id*. As detailed above and in the Respondents' declarations and supplemental declarations, Respondents quickly implemented numerous precautionary measures to halt the introduction and spread of the virus. Measures have been adjusted as circumstances have changed. Presumably, measures will be further modified and enhanced to comply with the *Gayle v. Meade* preliminary injunction. *Gayle,* 2020 WL 3041326, at *23. Based on the foregoing, the Court finds Respondents have not violated Petitioners' constitutional rights and denies the Petition.

---

[7] Petitioners graphically characterizes the facilities as promoting "lethal petri-dish conditions." (Doc. 35 at 5). This suggestion is absurd. Detainees are not in "glass bubble" without any interaction with staff. Countless numbers of staff interact with detainees at the facilities and arguably are subjected to these same conditions.

Accordingly, it is hereby

**ORDERED, ADJUGED,** and **DECREED**:

1. The Petition (Doc. 1) is **DISMISSED AS MOOT** as to **Petitioner St. Louis.**

1. The Petition (Doc. 1) is **DENIED** and this action is **DISMISSED** as to **the remaining Petitioners**.

2. The Clerk shall enter judgment, deny all motions as moot and close this case.

**DONE and ORDERED** in Chambers, in Fort Myers, Florida, this 26th day of June, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

FTMP-1
Copies:
Counsel of Record